STATE EX REL. A. L. HYATT ET AL. v. J. L. HAMME.

(Filed 6 October, 1920.)

**1. Officers—Public Officers—Prosecuting Attorney—Removal from Office —Criminal Law—Intent—Statutes.**

The proceedings before the judge of the Superior Court to remove a prosecuting attorney, sheriff, police officer, or constable from office, C. S., 3208, is of a civil nature for the protection of the public, and is not a criminal proceeding against the officer.

**2. Same—Property—Constitutional Law— Evidence— Admissions— Trial by Jury.**

The proceedings before the judge to remove a prosecuting attorney from office "for willful misconduct or maladministration in office," or on the other grounds stated in C. S., 3208, do not require an issue to be submitted to the jury. Upon the defendant's own admissions in this case, and evidence, he is guilty of the offense charged, which is sufficient to remove him from office; such office is not a property right under the provisions of the Constitution of North Carolina, Art. I, sec. 19.

**3. Appeal and Error—Officers—Public Office—Removal from Office— Findings—Evidence—Statutes.**

An appeal from the judgment of the Superior Court judge that a prosecuting attorney be removed for "willful misconduct or maladministration in office," etc., is upon questions of law and legal inference, if justified by the findings of facts supported by evidence, Constitution, Art. VI, sec. 8; and the appeal is allowed by C. S., 638.

**4. Officers—Public Officers—Removal from Office—Statutes—Evidence.**

The evidence of a prosecuting attorney in proceedings before the judge to remove him from office, C. S., 3208, for misconduct, etc., is sufficient to sustain an order removing him when it admits that he attempted to induce, and did induce, a person to violate the statutes of our State in participating in acts made an offense for immorality, etc., whatever his intent may have been therein.

**5. Same—Admissions—Petition to Remove from Office—Conviction.**

When a prosecuting attorney has been removed upon his own testimony from his office in proceedings before the judge, C. S., 3208, he may not complain that it was not in accordance with the specifications alleged against him in the petition, but upon the specifications in his own evidence, as he could not have been taken by surprise, or well have asked for an amendment to the petition, permitted by this statute in proper instances.

APPEAL by defendant from *Kerr, J.,* at May Term, 1920, of LENOIR.

This is a proceeding to oust the defendant as prosecuting attorney of the recorder's court of Kinston, under the provisions of sec. 3208, C. S., for willful misconduct in office. ·

The evidence is voluminous, but it is not necessary to recite it, as the facts found by the judge are set out in his judgment, which is as follows, and there is evidence and admissions of the defendant to sustain his findings:

.JUDGMENT.

SUPERIOR COURT—MAY TERM, 1920.

This proceeding coming on to be heard before the undersigned judge of the Superior Court, presiding· in this the Sixth Judicial District, and being heard upon the pleadings and the evidence, which appears of record.

The court doth find the following facts, viz.:

1. That the defendant, J. L. Hamme, was duly elected city prosecuting officer for the city of Kinston, North Carolina, and about July, 1919, was duly inducted into said office and began the duties incident to the same as prescribed by chapter 277, Laws 1919. And at the time hereinafter referred to the said defendant was performing the duties of said office.

2. That the said defendant, some time after his entry upon the duties of said office, went, in the night time, to the home of one Mabel Holmes, a prostitute, who kept a house of prostitution in the "red light district" of the city of Kinston, and after drinking a small quantity of cologne or alcohol, falsely pretended to be in a state of intoxication, and by means of this fraud and deceit, attempted to procure the said Mabel Holmes to commit a crime, to wit, sell to him liquor or some intoxicant.

3. That on or about 16 March, 1920, the said defendant, J. L. Hamme, in the night time, and about the hour of midnight, went to the said home of the said Mabel Holmes, a prostitute, and a keeper of a house of prostitution, and being then and there alone with the said prostitute, removed his clothes and shoes, save his shirt and underclothes, and while in the said woman's bedroom, was found by the police officer of the said city of Kinston, North Carolina, one Richard Stroud, which officer at that time raided the said house of prostitution and forcibly opened the door to the said room in which the defendant, J. L. Hamme, was then and there in company with the said prostitute, Mabel Holmes, and the defendant, J. L. Hamme, then and there violently attempted to prevent said entrance.

The defendant's explanation given for being caught in said prostitute's bedroom was that he had planned with one Aldridge, a policeman of the said city of Kinston, for the purpose of getting evidence to convict said prostitute, to go to her said house at the said time, and go to bed with said prostitute after removing his clothes, and at a given signal, which was to be made by said defendant while in the bed with said prostitute, the said policeman was to forcibly raid the house, and the defendant was to flee undressed with his clothes in his hands, and the said policeman Aldridge was to arrest the woman, not recognizing the said defendant, J. L. Hamme, and the said policeman was to testify to these facts in the prosecution of the said woman in the city court of the city of Kinston, the defendant, J. L. Hamme, being then and there the prosecuting officer of the said court. The said policeman Aldridge denied having any such agreement with the said defendant, and testified that the first he knew of the said defense of the defendant, J. L. Hamme, was about three o'clock a. m. after the said defendant was apprehended in the said house by policeman Stroud, when the said defendant met Aldridge near the Norfolk-Southern depot and asked him to state that this was the plan and agreement, and stating to him that he had already made it all right with the woman; said policeman further testified that he told said defendant in answer to said defendant's request, that he had no such plan or agreement, and if he had to tell anything, he would have to tell the truth.

The court does not pass upon the fact whether the defendant was in the house of the said Mabel Holmes for an immoral purpose, or for the purposes contended for by the defendant; but, upon the foregoing facts found, which facts appear from the evidence of the defendant, the court doth adjudge the said defendant guilty of misconduct in office, which said misconduct doth bring his office in contempt, and renders the said officer inefficient to conduct the duties thereof. And the said J. L. Hamme, city prosecuting officer of the city of Kinston, North Carolina,

is hereby removed from said office as provided by law, and to pay the cost of these proceedings to be taxed by the clerk.

JOHN H. KERR,
Judge Presiding Sixth District.

Appeal by defendant.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*Rouse & Rouse, Moore & Croom, G. V. Cowper, and R. T. Allen for defendant.*

CLARK, C. J.   The statute under which this proceeding is based is to be found in sections 3208-3212, inclusive, of C. S.   It was originally chapter 671, Public-Local Laws 1913, and applied only to Guilford County.   By chapter 288, Laws 1919, it was made applicable to the whole State.   Section 3208, C. S., provides: "Any city prosecuting attorney, any sheriff, police officer, or constable shall be removed from office by the judge of the Superior Court upon charges made in writing, and hearing thereunder for the following causes:

1. For willful or habitual neglect or refusal to perform duties of his office.

2. For willful misconduct or maladministration in office.

3. For corruption.

4. For extortion.

5. Upon conviction of a felony.

6. For intoxication, or upon conviction of being intoxicated."

The officer may be removed for misconduct or failure to perform the duties of his office, whether such failures were willful or habitually negligent; the statute was evidently enacted for the protection of the public, and not for the punishment of the delinquent officer.   It is not a criminal proceeding for his punishment, but is a civil proceeding brought in the name of the State upon the relation of five qualified electors in the county.   *Territory v. Sanches,* 20 Ann. Cas., 109, and note on page 112. The delinquent officer is not entitled to have the issues of fact tried by a jury.   An office is not property within sec. 19, Art. I, of the Constitution.   *Mial v. Ellington,* 134 N. C., 131, and citations thereto in Anno. Ed.   This statute does not provide for any appeal from the findings and judgment of the Superior Court, but the appeal is authorized by C. S., 638, which is as follows: "An appeal may be taken from every judicial order of the judges of the Superior Court upon or involving a matter of law or legal inference."   Consequently, this Court has no jurisdiction to review the findings of fact made by the judge below under sec. 8, Art. VI, of the Constitution.

STATE *v.* HAMME.

In Mechem on Officers, sec. 457, he says: "Misconduct, willful mal--administration, or breach of good behavior, in office, do not necessarily imply corruption or criminal intention. The official doing of a wrongful act, or the official neglect to do an act which ought to have been done, will constitute the offense, although there was no corrupt or malicious motive."

In Throop on Officers, sec. 367, it is said: "Where such an official act or omission has occurred, the officer may be removed therefor without reference to the question whether it was done maliciously or corruptly," citing *Minkler v. State,* 14 Neb., 181, and *S. v. Leach,* 60 Me., 58. In the latter case it is said: "Misconduct does not necessarily imply corruption or criminal intention. We think the Legislature used the word in its more extended and liberal sense. This statute is not, strictly speaking, a penal statute, but is rather remedial and protective."

In the courts of nearly all the States which have similar statutes it is held that it is in the nature of a civil proceeding for the protection of the public from misconduct, neglect of duty, or inefficiency by providing a speedy investigation and removal of the officers named. Such a power is sometimes vested in the Governor or other executive officer, but in others, as in this State, the power is vested in the courts. It is not a criminal proceeding, and it is held that though the act for which the officer is removed may also be punishable as a crime, this does not affect his liability to removal for the same act. *Territory v. Sanches,* 20 A. & E. Anno. Cas., 109, and notes thereto. This is true also as to impeachments, Art. IV, sec. 3.

Upon the facts found by his Honor, it should be unnecessary in any tribunal to debate whether the defendant should be removed from office under the clear intent and purport of this statute. It appears that:

1. A prosecuting attorney accepted employment and a fee in a civil action from one whom he was prosecuting on a charge of being a habitual criminal and violator of the law, and he put in evidence his own letters to her, a woman of the town, addressing her as "My dear Miss Holmes," and making appointments with her to come to his office from time to time.

2. He also went to her house, according to his own statement, feigning drinking and drunkenness, and tried to get her to sell him liquor in order to induce her to commit a crime for which he would convict her.

3. He, being prosecuting attorney, according to his own statement, went to the prostitute's house, and in her bedroom and in her presence took off his outer clothing with a view to being caught by the officer in this compromising position, in order that he, as prosecuting attorney, might obtain evidence against the woman, he having arranged, he says, with the policeman to make his own escape, and that the policeman

should perjure himself by testifying that he did not recognize the man who was with the woman.

Upon his own statement, the defendant endeavored to procure the woman to commit two distinct and separate offenses against the law, with a view of convicting her of such offenses, and also was guilty of an attempt to procure the policeman to perjure himself.

It was unnecessary, as his Honor held, for him to pass upon the question whether when the defendant went to the house of the prostitute his purpose was as alleged by the State, or that stated in the defendant's evidence. Upon the facts found by the judge from the evidence of the . defendant, the court properly adjudged "the said defendant is guilty of misconduct in office, which said misconduct does bring his office into contempt, and renders said officer inefficient to conduct the duties thereof," and removed him from office.

There can be no two opinions upon that subject, and the necessity for just such a statute as this could not be more strongly presented than by the facts of this case, for without such an act the public sense of propriety and decency would have been outraged by his remaining in office.

The learned counsel for the defendant puts his defense almost entirely upon the ground that the defendant was found guilty by the judge most largely, if not altogether, on the specifications of misconduct stated in the defendant's own testimony rather than upon the allegations of fact specified in the petition. C. S., 3210, provides that, "The petition shall state the charges against the accused, and may be amended." This is a civil proceeding, and if the additional facts and circumstances stated in the defendant's testimony had come out in the evidence for the State, the defendant might well have alleged that he was taken by surprise and unprepared to meet them. The court might thereupon have permitted an amendment of the charges, and, in his discretion, have given the defendant time to answer and to produce his witnesses, but when, as here, the additional facts in proof of the charge of misconduct in office are stated by the defendant himself, and the judge finds those statements to be true, the defendant has no ground to complain. He could not, and did not, ask time to produce witnesses to contradict his own testimony, which fully authorized, and indeed required, the judge to remove him from office.

No error.